UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARYL ANDREW VINET                                                CIVIL ACTION

VERSUS                                                            NO. 14-1765

DR. SMITH, ET AL.                                                 SECTION: "R"(3)

### REPORT AND RECOMMENDATION

Plaintiff, Daryl Andrew Vinet, filed this civil action pursuant to 42 U.S.C. § 1983 against "Dr. Smith" and the "Medical Department" at the Jefferson Parish Correctional Center. In this lawsuit, plaintiff claimed that he was denied adequate medical care while incarcerated.[1]

The defendants filed a motion to dismiss.[2] Because they presented matters outside of the complaint for the Court's consideration, their motion was converted into one for summary judgment, see Fed.R.Civ.P. 12(d), and plaintiff was order to file an opposition on or before November 12, 2014.[3] To date, no opposition has been filed.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.

---

[1]  After filing this lawsuit, plaintiff was released from incarceration.

[2]  Rec. Doc. 14. Correcthealth Jefferson, LLC, the entity which operates the jail's medical program, appeared on behalf of the "Medical Department" in this proceeding.

[3]  Rec. Doc. 15.

Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In his complaint, plaintiff stated his claim as follows:

I'm writing today in regards to my compliant.  I arrived here at J.P.C.C.  I was labeled under chronic pain inmate.  I was seen by Dr. Smith whom told me that

needed my medical records from L.S.U. Once he recieved them he told me he did not want to treat me for the pain, because J.P.C.C. Medical informed that I had liver damage. To date I have not been treated for either my chronic pain or the liver damge that was discovered.[4]

In their motion, the defendants argue that there simply has been no underlying constitutional violation in this case. For the following reasons, the Court finds that the defendants are correct on that point.

As an initial matter, it must be noted that an inmate's right to medical care under the United States Constitution is extremely limited. Specifically, regardless of whether he is a pretrial detainee or a convicted prisoner, his constitutional right to medical care is violated *only* if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Here, the defendants argue that plaintiff cannot show the "deliberate indifference" necessary to prove his claim. Regarding the "deliberate difference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

---

[4] Rec. Doc. 7, p. 5.

3

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In support of their motion, the defendants have submitted copies of plaintiff's medical records. It is clear that such records may be used to counter a prisoner's allegations of deliberate indifference. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Those records document a course of medical treatment while plaintiff was the Jefferson Parish Correctional Center, including but not limited to the following entries:

- On March 24, 2014, a medical screening was completed, with plaintiff reporting that he had a sciatic nerve operation in October of 2013 and was currently taking Lorcet and Valium.[5]

- On March 25, 2014, plaintiff was placed on the protocol for moderate benzodiazepine withdrawal, which included treatment with Klonopin,[6] and the protocol for narcotic withdrawal, which included treatment with Reglan.[7]

- On or about March 31, 2014, plaintiff's medical records were ordered from University Hospital.[8]

---

[5] Rec. Doc. 14-3, p. 1.

[6] Rec. Doc. 14-3, pp. 2-3.

[7] Rec. Doc. 14-3, pp. 4 and 12.

[8] Rec. Doc. 14-3, p. 13.

- On April 15, 2014, blood samples were taken for medical testing, and, on April 22, 2014, it was determined that plaintiff had hepatitis.[9]

Plaintiff was then released in August of 2014.[10]

Defendants argue, and the Court finds, that plaintiff received medical treatment while he was at the Jefferson Parish Correctional Center. Although he disagreed with his medical treatment, such a disagreement does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, while plaintiff clearly believes that he should have been provided *additional* care, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). Plaintiff, who has failed even to oppose the defendants' motion, has certainly provided no basis whatsoever for such second-guessing in this case.

---

[9] Rec. Doc. 14-3, p. 14.

[10] Rec. Doc. 7, p. 7; see also Rec. Doc. 5.

5

This is true even if the medical treatment plaintiff received was in fact subpar in some respect. The federal constitution simply does not require that inmates receive optimal care, and the fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Indeed, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).

For all of these reasons, the Court finds that plaintiff's claims that his federal constitutional rights were violated in this case have no merit and that the defendants are therefore entitled to judgment as a matter of law on those claims.

In his complaint, plaintiff does not specify whether he is also asserting claims under state law. However, even if that was his intention, the Court may decline to consider any such state law claims in light of the fact that plaintiff's federal claims should be dismissed for the reasons already discussed. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When

a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). If plaintiff wishes to pursue claims under state law, he should be required to do so in the state courts.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the defendants' unopposed motion, Rec. Doc. 14, be **GRANTED**.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** and that his state law claims, if any, be **DISMISSED WITHOUT PREJUDICE** to their being asserted in the state courts.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this tenth day of December, 2014.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.